UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANGELA NGUYEN, | ) |
|     Plaintiff and Defendant-in-Counterclaim, | ) |
| v. | ) |
| NATIONAL LENDING CORPORATION, | ) Civil Action No. 05-10531-JLT |
|     Defendant and Plaintiff-in-Counterclaim, | ) |
| and HAO NGUYEN, | ) |
|     Defendant. | ) |

### ANSWER OF NATIONAL LENDING CORPORATION AND HAO NGUYEN TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM OF NATIONAL LENDING CORPORATION

Defendants National Lending Corporation ("NLC") and Hao Nguyen hereby answer, by and through their attorneys, the corresponding numbered paragraphs of the Plaintiff's Complaint as follows:

1. Defendant has insufficient knowledge to form a belief as to the truth of the allegations in Paragraph 1.

2. Denied insofar as Defendant NLC is incorporated under the laws of New Jersey. Otherwise, admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Paragraph 6 consists of a conclusion of law and requires no answer.

7. Admitted.

8. Denied.

9. Denied. By way of further explanation, NLC paid for expenses associated with establishing and maintaining its office in Lowell; NLC did not pay for Plaintiff's expenses.

10. Denied.

11. Denied.

12. Denied.

13. Denied.

14. Denied.

15. Denied.

## COUNT I
## ASSAULT
(Alleged against Defendant Hao Nguyen only)

16. Defendant incorporates herein the above responses to Paragraphs 1 through 15.

17. Denied.

18. Denied.

## COUNT II
## BATTERY
(Alleged against Defendant Hao Nguyen only)

19. Defendant incorporates herein the above responses to Paragraphs 1 through 18.

20. Denied.

21. Denied.

## COUNT III
## FALSE IMPRISONMENT
(Alleged against Defendant Hao Nguyen only)

22. Defendant incorporates herein the above responses to Paragraphs 1 through 21.

23. Denied.

24. Denied.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Alleged against Defendant Hao Nguyen only)

25. Defendant incorporates herein the above responses to Paragraphs 1through 24.

26. Denied.

27. Denied.

## COUNT V
## UNLAWFUL DISCRIMINATION

28. Defendants incorporate herein the above responses to Paragraphs 1through 27.

29. Admitted insofar as Plaintiff's Charge of Discrimination, MCAD Docket No. 04BEM02122, was timely. Otherwise, denied.

30. Admitted.

31. Admitted.

32. Admitted.

33. Denied.

34. Denied.

35. Denied.

36. Denied.

## COUNT VI
## HOSTILE ENVIRONMENT HARASSMENT

37. Defendants incorporate herein the above responses to Paragraphs 1 through 36.

38. Admitted.

39. Denied.

40. Denied.

41. Denied.

42. Denied.

## COUNT VII
## QUID PRO QUO SEXUAL HARASSMENT

43. Defendants incorporate herein the above responses to Paragraphs 1 through 42.

44. Admitted.

45. Denied.

46. Denied.

## COUNT VIII
## VIOLATION OF TITLE VII
(Alleged against Defendant National Lending Corporation only)

46. *[sic]* Defendant incorporates herein the above responses to Paragraphs 1through 46.

47. Admitted insofar as Plaintiff's Charge of Discrimination, EEOC Docket No. 16CA402245, was timely.  Otherwise, denied.

48. Admitted.

49. Admitted.

50. Denied.

## COUNT IX
## NEGLIGENT HIRING AND SUPERVISION
(Alleged against Defendant National Lending Corporation only)

50. *[sic]* Defendant incorporates herein the above responses to Paragraphs 1through 50.

51. Denied.

52. Denied.

53. Insofar as Paragraph 53 consists of a conclusion of law, it requires no answer.  Otherwise, denied.

54. Insofar as Paragraph 54 consists of a conclusion of law, it requires no answer. Otherwise, denied.

55. Denied.

## **RELIEF SOUGHT**

Defendants deny all allegations in the WHEREFORE clauses of Plaintiffs' Complaint, deny that they are liable to Plaintiff in any way and deny all allegations not specifically admitted above.

## **AFFIRMATIVE DEFENSES**

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim for which relief can be granted and therefore should be dismissed.

### SECOND AFFIRMATIVE DEFENSE

The Plaintiff's claims against the Defendants are wholly insubstantial, frivolous, without merit and not brought in good faith, in violation of M.G.L. c. 231, § 6F and Rule 11 of the Federal Rules of Civil Procedure. Accordingly, Defendants are entitled to recover all costs and attorneys' fees they may incur in the defense of this matter.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's complaint is barred because any actions taken or directed against her were based on legitimate and non-discriminatory reasons.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by her own acts, deeds and omissions.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands, laches, waiver and/or estoppel.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's alleged damages are not causally related to any alleged conduct of Defendants.

SEVENTH AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery of some or all of the damages claimed in the Complaint as a matter of law or because of her failure to adequately mitigate her damages.

Defendants hereby give notice that they intend to rely upon such other and further defenses that may become available or apparent during the discovery of this matter and hereby reserve the right to amend their Answer and to assert any such defenses.

WHEREFORE, Defendants National Lending Corporation and Hao Nguyen demand that the Complaint be dismissed with prejudice and that judgment enter for Defendants, together with costs, attorneys' fees and such further relief as the Court deems just and appropriate.

DEFENDANTS DEMAND A TRIAL BY JURY ON ALL ISSUES.

## **COUNTERCLAIM OF NATIONAL LENDING CORPORATION**

Pursuant to Fed.R.Civ.P. 13(a), Plaintiff-in-Counterclaim National Lending Corporation brings the instant Counterclaim against Defendant-in-Counterclaim Angela Nguyen.

### **Parties**

1. Plaintiff-in-Counterclaim National Lending Corporation ("NLC") is a New Jersey corporation with a principal place of business in Houston, Texas.

2. Defendant-in-Counterclaim Angela Nguyen, upon information and belief, is an individual residing in Lowell, Massachusetts.

3. This Court has original jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1332 because the action is between parties with a diversity of citizenship and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

**Factual Background**

4. National Lending Corporation ("NLC") was incorporated in 1999 and since 2001 has been assisting prospective borrowers in forty states in obtaining residential and commercial loans from its national network of lenders.

5. NLC contracts with Loan Originators around the country to assist customers in obtaining loans.

6. On November 11, 2003, Angela Nguyen entered into a "Loan Originator Agreement" with NLC which sets forth the terms of her business relationship with NLC as a Loan Originator.  See Exhibit A.

7. Section Four, Subsection (a) of the Loan Originator Agreement, the "Non-Competition" clause, prohibits Angela Nguyen, during her business relationship with NLC and for a period of two years after its termination, from engaging in any business competitive with that of NLC within a five mile radius of the NLC office out of which she works or worked.

8. Section Four, Subsection (b) of the Loan Originator Agreement, the "Non-Solicitation of Borrowers" clause, prohibits Angela Nguyen, during her business relationship with NLC and for a period of two years after its termination, from soliciting NLC's borrowers (both prospective and existing) within a five mile radius of the NLC office out of which she works or worked,

except for the purpose of furthering the business of NLC.

9. Section Four, Subsection (c) of the Loan Originator Agreement, the "Non-Interference" clause, prohibits the Angela Nguyen, during her business relationship with NLC and for a period of two years after its termination, from inducing or encouraging any other NLC Loan Originator to seek a business relationship with any competitor of NLC or to terminate his/her relationship with NLC.

10. Ms. Nguyen worked out of the NLC office located at 42 Branch Street in Lowell, Massachusetts.

11. In or around March of 2004 Ms. Nguyen encouraged a number of NLC Loan Originators working out of NLC's Lowell office to leave NLC and work for another local mortgage company, in violation of the Non-Interference clause, Section Four, Subsection (c) of her Loan Originator Agreement.

12. On or about April 22, 2004, without NLC authorization, Ms. Nguyen changed the locks on the front door of NLC's Lowell office, preventing other NLC Loan Originators from entering the building and conducting business, in violation of the Non-Interference clause, Section Four, Subsection (c) of her Loan Originator Agreement.

13. On April 27, 2004, Hao Nguyen, Chief Executive Officer of NLC, terminated NLC's business relationship with Angela Nguyen because of her actions as described in Paragraphs 11 and 12 of this Counterclaim.

14. Since April 2004, Angela Nguyen has worked as a Loan Originator for several local mortgage companies located within a five mile radius of NLC's Lowell Office, including Mortgage Trust Group, in violation of the Non-Competition clause, Section Four, Subsection (a) of her Loan Originator Agreement.

15. Angela Nguyen has solicited more than ten (10) NLC customers to do business with a competitor of NLC and sever their business relationships with NLC, in violation of the Non-Solicitation clause, Section Four, Subsection (b) of her Loan Originator Agreement.

## COUNT I
## BREACH OF CONTRACT

16. NLC hereby incorporates by reference the allegations contained in paragraphs 1 through 15 of this Counterclaim as if fully stated herein.

17. NLC has performed all conditions, covenants, and promises required to be performed by it in accordance with the terms and conditions of the Loan Originator Agreement.

18. Angela Nguyen has breached the Loan Originator Agreement.

19. As a direct and proximate result of Angela Nguyen's breach, NLC has suffered and continues to suffer financial loss and irreparable damage to its

goodwill, competitive position and future business.

## COUNT II
## MALICIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS AND CONTRACTUAL RELATIONS

20. NLC hereby incorporates by reference the allegations contained in paragraphs 1 through 19 of this Counterclaim as if fully stated herein.

21. Angela Nguyen has intentionally and maliciously interfered with NLC's advantageous business relationships with customers.

22. Angela Nguyen has intentionally and maliciously interfered with NLC's advantageous contractual relationships with Loan Originators.

23. As a direct and proximate result of Angela Nguyen's conduct, NLC has suffered and continues to suffer financial loss and irreparable damage to its goodwill, competitive position and future business.

### Jury Demand

PLAINTIFF-IN-COUNTERCLAIM DEMANDS A TRIAL BY JURY ON ALL ISSUES.

WHEREFORE, Plaintiff-in-Counterclaim National Lending Corporation respectfully requests that this Court grant:

1) Judgment against Defendant-in-Counterclaim in an amount to be determined at trial, plus interest and costs;

2) Attorneys' Fees and Costs;

3) Such other relief as this Court deems just and proper.

Respectfully submitted,

NATIONAL LENDING CORPORATION
And HAO NGUYEN

By their attorneys,

/s/ Tamsin R. Kaplan
Tamsin R. Kaplan BBO # 561558
TAMSIN R. KAPLAN & ASSOCIATES
90 Concord Avenue
Belmont, MA 02478
(617) 484-3210

Dated:  November 23, 2005

CERTIFICATE OF SERVICE

I, Tamsin R. Kaplan, hereby certify that a true and accurate copy of the above document was served this 23rd day of November, 2005, by electronic filing and first class mail, postage pre-paid, to attorney for the Plaintiff, Michael P. Robinson, Esq., Law Offices of Stephen M. Robinson, 155 South Main Street, Suite 402, Providence, RI 02903-7115.

/s/ Tamsin R. Kaplan
Tamsin R. Kaplan

# LOAN ORIGINATOR AGREEMENT

This AGREEMENT is made effective by and between "National Lending Corporation," a corporation that organized and existing under the laws of the State of New Jersey with a principal place of business at 3673 Westcenter Drive, Houston, Texas 77042 (hereinafter referred to as "NLC") and the undersigned individual (hereinafter referred as "Loan Originator")

## RECITALS

WHEREAS, Loan Originator is desirous of the business of originating mortgage loans by obtaining and preparing loan application and other materials for NLC on real property from prospective borrowers;.

WHEREAS, NLC is engaged in the business of originating residential and commercial mortgage loans and processing loan applications.

WHEREAS, NLC has offered to Loan Originator compensation as set forth under the terms and conditions in this Agreement and NLC published commission schedules as amended from time to time, and Loan Originator is willing to associate and be employed with NLC on such terms and conditions.

WHEREAS, Loan Originator acknowledges and agrees the association and employment with NLC is on an exclusive basis in that, representation of other mortgage lenders or brokers by Loan Originator during the term of this Agreement constitutes violation of this Agreement and shall be considered a repudiation and termination of this Agreement by Loan Originator.

NOW THEREFORE, in consideration of the above recitals, the mutual promises and agreements contained herein are mutually agreed as follows:

## SECTION ONE

## RELATIONSHIP AND DUTIES

**A.     Scope and Duties:**

Loan Originator shall and hereby does associate him/herself with NLC to obtain qualified borrowers who will apply to NLC to obtain loans secured by mortgages on their existing real property or proposed purchase of real property. Loan Originator must use the means and manner by which those duties shall be performed, as approved and prescribed by NLC guidelines and procedures. Loan Originator agrees to comply with all rules, regulations, guidelines, instructions, and procedures, either now in existence or issued from time to time.

**B.     Professional Standards:**

Loan Originator will perform his/her duties under this Agreement in accordance with the laws of the State of Texas, the United States and any other applicable state and/or Municipal Laws, rules and regulations. In particular, Loan Originator covenants that he or she comply with the Federal Equal Credit Opportunity Act, the Fair Housing Home Mortgage Disclosure Act, the Federal Truth-in-Lending Act, and the Real Estate Settlement Procedures Act and its Regulation X. Loan Originator has an obligation to all Borrowers to ensure that Borrowers are advised of the various loan options available prior to obtaining and submitting an application to NLC.

**C.     Representation of NLC:**

Loan Originator agrees that he/she is not authorized to bind NLC in any agreements including, but not limited to agreements for advertising, marketing, promotions, etc. unless specifically authorized in writing by NLC in writing prior to the execution of such agreements. Loan Originator agrees that all promotional material used referencing NLC, its loan products or pricing must be approved by NLC prior to its distribution and unless otherwise agreed upon in writing by NLC, the cost of the promotional material will be the sole responsibility of the Loan Originator except as set forth herein, Loan Originator shall not have any authority, nor hold out to have any authority, to represent or obligate NLC in any manner whatsoever.

**D.     Fiduciary Duty:**

Loan Originator acknowledge that NLC, as a licensed mortgage lender/broker, may bear the responsibility to third parties for all actions of its employees. Loan Originator hereby acknowledges and agrees that Loan Originator is responsible for the content and quality of each application taken and each loan submitted. Loan Originator understands that the submission of a loan application containing false information is unlawful and is a loan fraud. If Loan Originator participates in loan fraud of any kind, consequences that may result to Loan Originator may be criminal prosecution; immediate termination of this Agreement and any and all legal remedies at law or in equity.

**E.     Advertising and Marketing:**

Loan Originator shall have the authority to represent NLC by business cards, advertisements, or other media documents, that Loan Originator is employed by NLC pursuant to obtaining mortgage loan applications. Loan Originator shall not engage in any advertising or any media marketing materials that are not approved by NLC.

**F.     Other Business Activities:**

Loan Originator may engage in other business activities to the extent such other activities do not interfere or conflict with Loan Originator's employment herein. Notwithstanding the term of this Agreement, Loan Originator shall not i) be associated with, or representative of, or enter into an agreement of any kind with any other mortgage brokerage or mortgage banking firm , or ii) originate any real property mortgage loans except on behalf of NLC .

**G.     Loan Applications:**

NLC, in its sole discretion, may reject any loan application for any reason, and NLC is under no obligation or requirement to process any loan application originated by Loan Originator. NLC shall have sole discretion of determining which lender loan programs it will participate in and which loan applications will be processed.

**H.     Expenses:**

Loan Originator shall promptly pay all expenses relating to the performance of Loan Originator's duties under this Agreement, including but not limited to indebtedness to NLC, Loan Originator shall be solely responsible for all of his/her expenses, including but not limited to travel, entertainment, education, dues, subscription, licenses, etc., and shall receive no remuneration or reimbursement of any nature whatsoever other than the commissions referred to herein.

**I.     Licenses:**

Loan Originator shall, if required by state law, obtain the appropriate loan officer license in each jurisdiction in which and from which Loan Originator solicits, offers or obtains applications in each jurisdiction, where required by law, in which and from which Loan Originator receives Override Compensation. Loan Originator will bear the cost of an initial and renewal fees for licensing and registrations. Loan Originator will make payment as instructed by NLC. Loan Originator shall comply with the terms, conditions and restrictions on use contained in any and all license or other contractual agreements between third party owners of any computer software and NLC, pursuant to which NLC has obtained the right to use such computer software. Loan Originator further agrees to comply with the terms of any license or other contractual agreement into which Loan Originator is required to enter with any third party computer software owner.

**J.     Records:**

Loan Originator shall maintain accurate and current records of all transactions entered into pursuant to this Agreement. Such books and records shall conform to the requirements of federal and state laws, the rules and regulations of appropriate regulatory agencies and the policies and procedures of NLC. Loan Originator shall maintain an accurate and current file of all commissions statements and other records and correspondence received from NLC and notify NLC in writing within Thirty (30) days after NLC making available such statements, records and correspondence, or any of them is inconsistent with Loan Originator's records or, in the opinion of Loan Originator, not accurate.

**K.     Background Information:**

The Loan Originator agrees that NLC shall have the right to run credit, employment and other financial and background investigations on the Loan Originator at the time NLC deems useful, whether such investigation is conducted by NLC or by an outside service or third party. The Loan Originator consents to such investigations and consents to the disclosure of any person or entity to NLC of any financial, background and employment information conducted by NLC or by an outside service or third party. If you have derogatory remark(s) on your background, you must provide paperworks discharge such remarks.

**L.     Photographs:**

The Loan Originator irrevocably consents to and forever authorizes the use by NLC or anyone authorized by NLC, its legal representatives or assigns, the absolute and unqualified right to use all photographs in which the Loan Originator has appeared for NLC and reproductions thereof, in which the Loan Originator has been included in whole or part, made through any media without, in which the Loan originator has been included in whole or part, made through any media without inspection or approval of the finished product or use to which it may be applied, in any manner NLC may desire, factually or fictionally the right to make adaptation of said material of every and any kind and character. NLC may adopt , arrange, change, dramatize, make musical versions of, interpolate in, transpose, add to, and subtract from such photographs and reproductions to such extent as NLC, in its sole discretion, may desire, and in any form and upon any and all adaptations thereof to renew such copyrights. The Loan Originator releases and discharges NLC , its assigns, agents, or licensees from any and all claims and demands that the Loan Originator may have, which arise out of or in connection with the use of such photographs or reproductions, including but not limited to, any and all claims of libel, slander, and invasion of privacy.

<u>**SECTION TWO**</u>

<u>**GENERAL COVENANT**</u>

In the course of Loan Originator's past and future relationship with NLC, and because of the nature of Loan Originator's responsibilities, Loan Originator has previously acquired, and may in the future acquire additional, valuable trade secrets, proprietary data and other confidential information (collectively, "Confidential Information") with respect to NLC's Borrowers, competitors and business. Such trade secrets, proprietary data and other confidential information include but are not limited to the following: NLC's existing and contemplated services, products, business and financial methods and practices, plans, pricing, selling techniques, computer hardware and software systems, and special methods and

processes involves in providing services, lists of NLC present and prospective Borrowers, methods of obtaining Borrowers, credit and financial data of the NLC's present and prospective Borrowers, particular business requirements of NLC's present and prospective Borrowers. In addition, Loan Originator on behalf of NLC, has developed, and may in the future further enhance or develop, personal acquaintances and relationships with NLC's present and prospective Borrowers, which acquaintances relationships may constitute NLC's only contact with such persons or entities. As a consequence thereof, the parties agree that Loan Originator occupies or will occupy a position of trust and confidence with respect to NLC's affairs and its products and services. In view of the foregoing and in consideration of the remuneration to be paid to Loan Originator and for his relationship, Loan Originator acknowledges and agrees that it is reasonable and necessary for the protection of the goodwill and business of NLC that Loan Originator make the covenants contained in Section Three and Four herein regarding the conduct of Loan Originator during and subsequent to relationship with NLC, and that NLC will suffer irreparable injury if Loan Originator engages in conduct prohibited thereby. Loan Originator represents that observance of the aforementioned covenants will not cause Loan Originator any undue hardship nor will it unreasonably interfere with Loan Originator's ability to earn a livelihood. The covenants contained herein shall each be construed as a separate agreement independent of any other provision of this Agreement, and the existence of any claim or cause of action of Loan Originator against NLC, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by NLC of any of those covenants.

## SECTION THREE

## CONFIDENTIALITY

In consideration of the willingness of NLC to associate itself with the Loan Originator in further consideration of all compensation to be paid to Loan Originator by NLC under the terms and conditions of this Agreement, Loan Originator agrees as follows:

(a) <u>Non-Disclosure</u>. Loan Originator, while in the employ of NLC or at any time thereafter, will not, without the express written consent of NLC, directly or indirectly communicate or divulge to, or use for his own benefit or for the benefit of any other person, firm, association or corporation, any of NLC's Confidential Information which was communicated to or otherwise learned of or acquired by Loan Originator during the course of his relationship with NLC; provided, however, Loan Originator may disclose or use such information under any of the following circumstances: (i) disclosure or use thereof in good faith by Loan Originator in connection with the performance of his duties in the course of his relationship by NLC, and (ii) disclosure or use by Loan Originator of any such information or data which is generally known within the industry or is otherwise available through independence sources.

(b) <u>Return of Information</u>. Promptly after the termination of his relationship with NLC for any reason and whether or not pursuant to an relationship agreement, Loan Originator will deliver to NLC all originals and copies of all Confidential Information, including but not limited to memoranda, Borrowers lists, samples, records, documents, computer programs, and other materials requested by NLC which he has obtained from NLC while serving in any such capacity

## SECTION FOUR

## NON COMPETITION

In consideration of the willingness of NLC to associate itself with the Loan Originator in further consideration of all compensation to be paid to Loan Originator by NLC under the terms and conditions of this Agreement, Loan Originator agrees as follows:

(a) <u>Non-Competition</u>. During Loan Originator's relationship with the NLC, and for a period of two (2) years following termination of Loan Originator's relationship with NLC for any reason whatsoever and within the reasonable geographical territory of five (5) miles radius from NLC's office the Loan Originator was assigned. Loan Originator shall not, where NLC is conducting its business, without the express written consent of NLC, directly or indirectly, own, manage, participate in or otherwise engage in any business which is competitive with NLC during Loan Originator's relationship with NLC.

(b) <u>Non-Solicitation of Borrowers</u>. During Loan Originator's relationship with NLC, and for a period of two (2) years following termination of Loan Originator's relationship with NLC for any reason whatsoever and within the reasonable geographical territory of five (5) miles radius from NLC's office the Loan Originator was assigned and except in the good faith furtherance of the interests of NLC, Loan Originator will not, without the express written consent of NLC, contact prospective borrowers or existing NLC members that the loan officer has come to know because the relationship with NLC, including any person, firm, association or corporation. Loan Originator will not directly or indirectly make any such contact, either for his benefit or for the benefit of any person, firm, association or corporation to make any such contact.

(c) <u>Non-Interference</u>. During Loan Originator's relationship with NLC, and for a period of two (2) years following termination of Loan Originator's relationship with NLC for any reason whatsoever, Loan Originator shall not induce or encourage, directly or indirectly, (i) any Loan Originator of NLC to leave his or her relationship, or to seek relationship with anyone other than NLC, unless it has been determined by NLC that such Loan Originator's performance or other characteristics or circumstances are such that Loan Originator's leaving NLC is in the best interests of NLC, or (ii) any Borrower of NLC to modify or terminate any relationship, whether or not evidenced by a written contract, with NLC unless it has been determined by the NLC that such modification or termination is in the best interests of NLC.

## SECTION FIVE

## COMPENSATION

(a) For all services to be rendered hereunder, Loan Originator shall be paid on a commission basis only, in the amounts and at the times set forth on NLC's published commission schedules as amended from time to time. Loan Originator's compensation shall be reported on Federal form W-2 as employee compensation, subject to FICA, FUTA, and income tax withholdings as required by federal, state, and local laws. NLC shall, in its sole and absolute discretion, have the right to change, modify, alter, or decrease any commissions payable pursuant to this Agreement ;

Case 1:05-cv-10531-JLT    Document 22-2    Filed 11/23/2005    Page 4 of 5

provided, however, that any changes, modifications, alterations, or decreases shall be effective when amended.

    (b)  Any money and value owed by Loan Originator to NLC, any debt, and any money and value which has been advanced or credited by or on behalf of NLC to, or for the benefit of, Loan Originator, represents a loan and may be offset and deducted by NLC from any commissions or other money or value then or thereafter owed by NLC to Loan Originator pursuant to this Agreement or owed by NLC to Loan Originator.  NLC is hereby authorized by loan Originator to deduct from commissions due the amount of any commissions paid to Loan Originator in connection with any payment or amount that NLC refunds to Loan Originator's Customer.

    (c)  Except as set forth above, Loan Originator shall receive no other compensation of any kind whatsoever under this Agreement.   Loan Originator will not receive any fringe benefits under this Agreement whatsoever, including but not limited to insurance benefits, disability income, paid vacation, expense reimbursement or retirement benefits unless otherwise specifically provided for in this Agreement.

## SECTION SIX

## INDEMNIFICATION

Loan Originator shall indemnify NLC for and hold it harmless from and against any and all claims, losses, liabilities, damages, taxes, penalties, fines, forfeitures, reasonable legal fees and expenses, judgments, and other costs and expenses that NLC may sustain arising and/or resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from a breach of any representation, warranty, or covenant by Loan Originator under this Agreement.

## SECTION SEVEN

## GOVERNING LAW

    (a)  It is agreed that this Agreement shall be governed by, construed and enforced in accordance with the Laws of the State of Texas.

    (b)  Since the parties acknowledge that significant aspects of performance of this Agreement will occur in the State of Texas even though the business activities of the Loan Originator may occur anywhere authorized , provisions of this Agreement will be governed and construed under the law of Texas.   If conflict or choice of law rules would choose a low of another jurisdiction, each party waives such rules and agrees the substantive law of Texas shall nonetheless govern. the parties agree that, without waiver of their rights and obligations, unless expressly provided to the contrary in this Agreement, the state and federal courts of Texas shall have exclusive jurisdiction of any litigation between the parties and the Loan Originator expressly submits to the jurisdiction and venue of the federal and state courts sitting in Harris County, Texas with respect to any such litigation.

## SECTION EIGHT

## ENTIRE AGREEMENT

This Agreement shall constitute the entire Agreement between the parties and any prior understanding of representation of any kind preceding the date of this Agreement shall not be binding upon either party except to the extent incorporated in this Agreement.

## SECTION NINE

## MODIFICATION OF AGREEMENT

Any modification of this Agreement or additional obligation assumed by either party in connection with this Agreement shall be binding only if evidenced in writing signed by each party or an authorized representative of each party.

## SECTION TEN

## ASSIGNMENT OF RIGHTS

This Agreement may be assigned by NLC in the event of a bona fide sale or transfer of ownership or control of the business to another person or entity; provided however, that the assignee shall assume all obligations of NLC herein,  in which case NLC shall be released of any further liability to the Loan Originator hereunder.  The personal rights and abilities of the Loan Originator are a material inducement to NLC to enter into this Agreement, and the Loan Originator may not assign this Agreement or to assign any rights (including the right to receive commissions).

## SECTION ELEVEN

## NO WAIVER

The failure of either party to this Agreement to insist upon the performance of any of the terms and conditions of this Agreement, or the waiver of any breach of any of the terms and conditions of this Agreement shall not be construed as thereafter waiving any such terms and conditions, but the same shall continue remain in full force as if no such forbearance or waiver occurred.

SECTION TWELVE

**EFFECT OF PARTIAL INVALIDITY**

The invalidity of any portion of this Agreement does not and will not be deemed to affect the validity of any provision, in the event that any provision of this Agreement is held to be invalid, the parties agree that the remaining provisions shall be deemed to be in full force and effect.

**SECTION THIRTEEN**

**TERM AND TERMINATION**

    (a)  The parties agree that this Agreement is "AT WILL" and may be terminated by either party for convenience with notice to the other party. Additionally, this Agreement may be terminated by operation of law or upon the death or disability of Loan Originator.

    (b)  This Agreement shall continue in effect until Termination.

    (c)  Upon the termination of this Agreement, all unpaid commissions earned by loan originator prior to the effective date of termination of this Agreement shall be paid by NLC to Loan Originator within a reasonable period of time. No further compensation, other than the commissions earned as of the effective date of Loan Originator's termination, shall be payable to loan originator under this Agreement after Termination. However, NLC shall have the right to offset against any commissions due to Loan Originator the amount of any indebtedness owned by Loan Originator to NLC, or any charges made by NLC to Loan Originator. Upon Termination of this Agreement and any debt that may thereafter exist, shall without notice immediately become due and payable and shall bear interest at the highest rate permitted under applicable law until paid.

**SECTION FOURTEEN**

**NOTICES**

All notices pertaining to this Agreement shall be in writing and shall be transmitted either by personal hand delivery or through the United States Post Office. The addresses set forth herein for the respective parties shall be the places where notices shall be sent, unless written notice of a change of address is given.

IN WITNESS WHEREOF each party to this Agreement has caused it to be executed on the date indicated herein.

Date: 11/11/2003

* First Name: ANGELA      * Last Name: NGUYEN

*  ☑  **By 1) clicking this box, 2) typing my name in the space indicated above, and 3) clicking on the "I agree" button below, I signify and acknowledge that I have received, read, understand, and agree to be bound by the rules made by NLC.**